**Betty J. HAGGART, Appellant,**

v.

**Doo W. CHO, M.D. and Altoona Hospital Center for Mental Health Services, Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1997.

Filed Nov. 26, 1997.

---

Stuart A. Carpey, Philadelphia, for appellant.

Clare M. Bello, Pittsburgh, for Cho, appellee.

Joseph A. Macerelli, Pittsburgh, for Altoona Hosp., appellee.

**524**

Before POPOVICH, SAYLOR and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of the Court of Common Pleas of Blair County in favor of appellees, Dr. Doo W. Cho and Altoona Hospital Center for Mental Health Services (the Hospital). In this case, summary judgment was granted on the grounds that appellant's cause of action was barred by the two-year statute of limitations and that the discovery rule did not toll the statute of limitations. Upon review, we affirm.

Herein, appellant, Betty J. Haggart, questions whether her cause of action is barred by the applicable statute of limitations. Appellant's Brief p. vi. Haggart argues that the motions for summary judgment should have been denied because: 1) The trial judge was incorrect in finding that the statute of limitations began to run in March of 1988, since the therapist-patient relationship did not end until May of 1990; and 2) The trial judge should have allowed a jury to consider whether the phenomenon of transference prevented Haggart from discovering the salient facts of her mistreatment until February of 1991, when she learned about transference from another therapist.

The trial court summarized the relevant facts underlying appellant's action in its opinion as follows:

The Plaintiff, Betty J. Haggart, began treatment with Dr. Cho on January 30, 1986, as a result of the Physician Referral Service at Altoona Hospital. During the course of her treatment under Dr. Cho, which lasted until May 3, 1990, Dr. Cho saw Mrs. Haggart in his private office over 50 times and also hospitalized Mrs. Haggart at the Altoona Hospital on three separate occasions: November 3, 1987 to November 12, 1987; March 7, 1988 to March 23, 1988; and March 5, 1990 to March 6, 1990. Mrs. Haggart also consulted Dr. Cho during an orthopedic admission to the Altoona Hospital which occurred from January 20, 1988 to January 23, 1988. According to the Plaintiff, the therapy sessions with Dr. Cho involved what she later perceived to be inappropriate intimate sexual contact and behavior on the part of Dr. Cho toward Mrs. Haggart. The alleged sexual conduct included prolonged touching of Mrs. Haggart's genitalia by Dr. Cho on two occasions and ongoing kissing, hugging and caressing which continued periodically until the end of the treatment in May of 1990. Mrs. Haggart was able to connect certain of these behaviors with a specific time. She testified at deposition that during her hospitalization in March of 1988, Dr. Cho, on at least two occasions, attempted to examine her breasts and abdomen area which bothered her very much and caused her to pull away from him (see deposition of Betty J. Haggart at pp. 243–247). Also, Mrs. Haggart described an occasion in January of 1988 where during an office visit Dr. Cho placed Mrs. Haggart's hand between his legs to show her that he had an erection (see deposition of Betty J. Haggart pp. 203–205). It is alleged that Mrs. Haggart willingly engaged in the sexual activity because she was in love with Dr. Cho. At the time those incidents took place, Mrs. Haggart purportedly did not perceive Dr. Cho's behavior towards her as harmful since she felt that he made her feel like a woman, that he cared about her, and that she was very special to Dr. Cho. The Plaintiff asserts that the visits with Dr. Cho were the high points of her week and she lived from week to week to see Dr. Cho (see deposition of Betty J. Haggart p. 241). Mrs. Haggart asserts that she was seeing Dr. Cho partly for depression and was harboring feelings of self guilt over problems she was having with her husband for which she felt she was the cause. Mrs. Haggart states that Dr. Cho acted toward her like a good friend, reassuring her that she was not the cause of her marital problems. It was on one such occasion that Dr. Cho allegedly placed her hand on his erection which Mrs. Haggart found to be a pleasurable experience (see deposition of Betty J. Haggart p. 211 and pp. 203–205). When asked in her deposition how she felt about Dr. Cho Mrs. Haggart responded, "... he was my god, ... He was my savior. Dr. Cho would never let anything happen, he promised me that...." (Deposition of

Betty J. Haggart p. 259). Mrs. Haggart's treatment under Dr. Cho ended on May 3, 1990, when she, against Dr. Cho's advice, terminated her final hospitalization at Altoona Hospital. She did not return to Dr. Cho for further treatment due to the fact that she could no longer afford Dr. Cho's services.

On November 13, 1990, Mrs. Haggart was seen by another doctor at the Altoona Hospital Mental Health Center and an evaluation of her continuing depression occurred. On November 21, 1990, Mrs. Haggart began counseling with an assigned therapist at the Altoona Hospital Mental Health Center. On or about February 26, 1991, Mrs. Haggart contends that she began to reveal to her therapist what had occurred while she was under the care of Dr. Cho. On or about January 1991, Mrs. Haggart claims that, through the assistance and treatment of her therapist, she came to learn that what she thought was a pure emotional relationship between her and Dr. Cho was, in fact, a result of her underlying psychiatric problem and the manner in which Dr. Cho dealt with her feelings and the nature of his treatment. It is at this point in time that Mrs. Haggart is alleged to have realized the true nature of her relationship with Dr. Cho and the harm he had perpetrated on her through the sexual intimacies they had shared. Mrs. Haggart now contends that her psychiatric condition had worsened as a result of the way in which Dr. Cho had treated her.

Trial Court Opinion pp. 2–6.

On February 26, 1992, Haggart filed suit against Cho and the Hospital by writ of summons. On December 30, 1992, Haggart filed a complaint alleging, *inter alia*, that she suffered damages as a result of the improper conduct of Cho. Haggart asserted a claim of corporate liability against the Hospital for negligently allowing Cho to treat her when it knew or should have known Cho was not properly trained, certified, experienced, emotionally stable and/or qualified to treat pa-

tients. In addition, she alleged that the Hospital violated the Mental Health Procedures Act, 50 P.S. § 7102, *et seq.*[1]

Both Cho and the Hospital raised the applicable two-year statute of limitations in their separate answers and new matters. On March 7, 1996, Cho filed a motion for summary judgment contending that the applicable statute of limitations had expired before Haggart filed suit. A similar motion for summary judgment was filed by the Hospital. On November 15, 1996, the trial court granted summary judgment in favor of Cho and the Hospital. This timely appeal followed.

The standard of review of an order granting summary judgment is well established:

> On review of an order granting summary judgment, we must determine whether the moving party has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 468–69 (1979). In making this determination, we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. *Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.,* 320 Pa.Super. 291, 467 A.2d 330 (1983). All doubts as to the existence of a factual dispute must be resolved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases. *Thompson Coal, supra.*

*E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 453, 622 A.2d 1388, 1390 (1993) (quoting *Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604, 607 (1991), *allocatur denied,* 530 Pa. 660, 609 A.2d 168 (1992)).

The applicable statute of limitations in the present action is two years. 42 Pa. C.S.A. § 5524. Pursuant to this statute, the two-year period begins to run:

---

1. In its opinion in support of summary judgment, the trial court stated that because Haggart's action was barred by the applicable statute of limitations, it did not reach a determination regarding corporate liability and the violation of the Mental Health Procedures Act. Because of our disposition, we similarly find it unnecessary to reach the merit of those issues.

" [A]s soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono Int'l Raceway v. Pocono Produce,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). A person asserting a claim is under a duty to use "all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Id.* In those circumstances where the plaintiff cannot reasonably be expected to be aware of the injury or of its cause, the discovery rule may apply to toll the running of the statute of limitations. *Id.* The discovery rule is a judicially created device which provides that the limitations period begins to run when "the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Redenz by Redenz v. Rosenberg,* 360 Pa.Super. 430, 434, 520 A.2d 883, 885, *allocatur denied,* 516 Pa. 635, 533 A.2d 93 (1987). The statute begins to run when the injured party "possess sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Brunea v. Gustin,* 775 F.Supp. 844, 846 (W.D.Pa.1991), quoting *Zeleznik v. United States,* 770 F.2d 20, 23 (3rd Cir.1985). *A. McD. v. Rosen,* 423 Pa.Super. 304, 307–308, 621 A.2d 128, 130 (1993).

In their motions for summary judgment, Cho and the Hospital argued that Haggart's cause of action was barred by the applicable two-year statute of limitations. Appellees maintained that Haggart was aware of her alleged mental and physical injuries and that such injuries may have been caused by the treatment performed by Cho as early as January 27, 1988, and no later than March of 1988. Moreover, appellees averred that the discovery rule did not operate to toll the running of the statute of limitations in this case. Haggart argued that her action was not barred by the applicable statute of limitations because the suit was initiated within two years of the termination of her treatment by Cho in May of 1990. In the alternative,

Haggart argued that the discovery rule operated to toll the running of statute of limitations in which to bring her action. We agree with the trial court's conclusion that Haggart's action is barred by the applicable statute of limitations and that her discovery rule argument is meritless.

■ Herein, Haggart relies on the decision of this court in *A. McD., supra,* for the proposition that the statute of limitations in a malpractice action against a psychiatrist, including claims of sexual misconduct during the course of treatment, begins to run from the date of the termination of the psychiatrist-patient relationship. We agree with the trial court that Haggart's reliance on the *A. McD.* holding is misplaced. In that case, . McDonald began treatment with Dr. Rosen, a psychiatrist, in August of 1979, for various maladies. McDonald also came under the care of Nancy Cochran, a therapist associated with Dr. Rosen, in October of 1979. In July of 1982, McDonald terminated her relationship with Dr. Rosen and thereafter ceased all further communications with him. She had become suspicious of his manner of treatment and felt that he was unable to cure her complaints. On February 13, 1985, McDonald filed a civil action against Dr. Rosen and Ms. Cochran, alleging that they had engaged in sexual misconduct during her course of treatment. This court determined that in July of 1982, McDonald was aware of what was happening to her and who was responsible for the alleged mistreatment. Coincidentally, it was at this time that she ceased all further treatment with Dr. Rosen and Ms. Cochran. Thus, this court held that the statute of limitations period began to run from July of 1982, not because it was the date upon which McDonald stopped treatment, but rather it was the date upon which McDonald possessed the salient facts regarding her alleged mistreatment. *See A. McD., supra.*

■ Contrary to Haggart's argument, Pennsylvania has not adopted a *per se* "continuous treatment rule," tolling the statute of limitations in a malpractice case until the end of treatment by the defendant. *See Greenberg v. McCabe,* 453 F.Supp. 765, 772 (1978),

*affirmed,* 594 F.2d 854 (3d Cir.1979), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 51 (1979). Rather, the courts of this Commonwealth simply apply the discovery rule to determine the date when a patient could reasonably be expected to know of his injury. In *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967), our supreme court stated:

> Presently pertinent are certain well settled legal principles: (a) mere mistake, misunderstanding or lack of knowledge do not toll the running of the statute of limitations; (b) if, through fraud, deception or concealment of facts, [a defendant] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then [the defendant] is estopped from evoking the statute; (c) the fraud which will toll the statute and effect and estoppel need not be fraud in the strictest sense, i.e., inclusive of an intent to deceive, but may be fraud in the broadest sense, i.e., inclusive of an unintentional deception.

*Walters,* 227 A.2d at 835 (citations omitted).

For example, in *Barshady v. Schlosser,* 226 Pa.Super. 260, 313 A.2d 296 (1973), we applied the discovery rule and extended the time which the patient had to file her suit from the date of her surgery to the date she learned of her injury from another physician. Therein, Barshady was injured during surgery on her middle ear to correct a hearing loss on April 25, 1961. Immediately after surgery, Barshady experienced severe pain, rawness of the tongue and numbness of the face and tongue. When she complained of these symptoms to Dr. Schlosser, he assured her that the condition was temporary. Barshady remained under the care of Dr. Schlosser from April of 1961 to March of 1963, during which Dr. Schlosser continued to assure Barshady that the pain was an emotional reaction to surgery and the numbness would be temporary.

Concerned that her recovery was not progressing, Barshady consulted another physician and learned, for the first time, that she had sustained injury to the chorda tympani nerve during surgery. On February 9, 1965, Barshady instituted a trespass action against Dr. Schlosser. This court held that the statute of limitations was tolled until March of 1963, when she was first able to discover the cause of her injury, and that Barshady's delay in seeking other medical advice was reasonable. We noted that Barshady had confronted Dr. Schlosser with her ailments immediately after the surgery and that the assurances of Dr. Schlosser lulled Barshady into a false sense of security. Dr. Schlosser's actions constituted a fraudulent concealment of Barshady's injuries, thereby, tolling the statute of limitations until March of 1963. *Barshady, supra.*

Herein, we have no such actions by Cho which lulled Haggart into a false sense of security in the psychiatrist-patient relationship. Haggart admits that Cho did not tell her that the sexual intimacies were part of her treatment. As our further analysis will reveal, Haggart was armed with the knowledge that something was awry with her treatment by Cho as early as March of 1988, when Cho attempted to examine her breasts and abdomen. In fact, Haggart admitted that she recognized the impropriety of this conduct based upon Cho's defined role as a psychiatrist.

We conclude that Haggart may not rely upon the date of her last appointment with Cho as the date on which the statute of limitations began to run, unless that was the earliest date upon which by the exercise of reasonable diligence, she could have learned of the salient facts of her cause of action. Consequently, we turn now to Haggart's argument that she could not have reasonably discovered the salient facts of her mistreatment until February of 1991, when she learned of Cho's abuse of the transference phenomenon.[2]

---

**2.** Haggart asserts that the crux of this case is abuse of transference by Cho. "Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is generally applied to the projec-

tion of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." Stedman's Medical Dictionary 1473 (5th Lawyer's Ed.1982).

Haggart argues that her lack of knowledge of transference and her inability to comprehend why she was sexually attracted to Cho must be judged objectively. She concedes that she was overwhelmed by what she thought were feelings of love and physical attraction toward Cho. However, Haggart claims that she did not become aware that the reason she had fallen in love with Cho was because of transference until another therapist explained the phenomenon to her in February of 1991. Haggart maintains that until she was educated about transference, she could not comprehend that the sexual intimacies with Cho were improper. She states that she had no reasonable basis to question her relationship with Cho until learning of transference.

▇▇▇ Initially, we note that in applying the discovery rule, it is generally for the jury to determine whether a plaintiff should have made a timely discovery of his injury "unless the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law. In such cases, summary judgment may be entered by the court." *A. McD.*, 621 A.2d at 130 (citations omitted). Furthermore, when asserting the discovery rule as tolling the statute of limitations, the following standard of reasonable diligence must be satisfied:

The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard. The fact that this individual plaintiff may have lacked knowledge of his or her injury is "irrelevant," "the statute is tolled only if a reasonable person in the plaintiff's position would have been unaware of the salient facts." In defining reasonable diligence, the courts have stated "[t]here are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." Moreover, with respect to knowledge of a claim, "plaintiffs need not know that they have a cause of action, or that the injury was caused by another party's wrongful conduct, for once a plaintiff possesses the salient facts con-

cerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim."

*A. McD.*, 621 A.2d at 131 (quoting *Baily v. Lewis*, 763 F.Supp. 802 (E.D.Pa.1991), affirmed, 950 F.2d 721 (3d Cir.1991)).

The argument set forth herein by Haggart is essentially the same as that which we rejected in the case of *A. McD.*, *supra*. Therein, McDonald alleged that her continuing psychiatric problems precluded her from realizing that she had been treated improperly by her physician and therapist. She contended that it was not until years later when she discussed her prior treatment with her new psychologist that she learned her prior treatment, which included sexual conduct, was unethical. McDonald asked this court to apply the discovery rule and toll the limitations period until she learned her prior treatment was damaging from her current therapist. We declined to apply the discovery rule in *A. McD.*, 621 A.2d at 131, stating: "Inclusion of a plaintiff's mental capacity as a factor in determining the reasonableness of plaintiff's diligence runs counter to the [reasonable person standard.]"

Although the case of *E.J.M. v. Archdiocese of Philadelphia*, 424 Pa.Super. 449, 622 A.2d 1388 (1993), did not involve the transference phenomenon as a justification for the application of the discovery rule, we find the decision is also instructive. In that case, E.J.M., a former parishioner, brought a sexual assault and battery case arising out of alleged sexual abuse by a priest over a period of eight years, seven of which E.J.M. was a minor. E.J.M. conceded that he was aware of the sexual acts performed on him by his parish priest, which ended in 1981. However, E.J.M. claimed that he did not learn until 1988, that the physical acts committed by the priest were "abuse" and had caused him psychological and emotional harm.

We noted that the fact that a plaintiff is not aware that the defendant's conduct is wrongful, injurious or legally actionable is irrelevant to the discovery rule analysis. *E.J.M.*, 622 A.2d at 1394. Accordingly, we held that once E.J.M. was aware of what was happening to him and who was committing it, he had a duty to investigate the matter and

commence a cause of action, even though he did not appreciate that the priest's conduct constituted sexual abuse when the abuse took place. *Id.*

Similarly, Haggart maintains that although she knew of the sexual intimacies with Cho, she was not aware that the physical acts allegedly performed on her by Cho constituted "abuse" until another therapist educated her on the transference phenomenon. Haggart contends that she was unaware of the true nature of her relationship with Cho, and, consequently, she had no duty to investigate her cause of action until she learned of the transference phenomenon and its application to her situation.

However, the undisputed facts belie Haggart's argument. At her deposition, Haggart testified that during her hospitalization in March of 1988, on at least two occasions, Cho insisted on giving her a breast exam and checking her stomach. Haggart testified that this sexual advance bothered her very much and that she pulled away from Cho when he attempted to examine her breasts. Haggart further testified that she understood Cho was a psychiatrist and that "[h]e should examine my head not my breasts." (Deposition of Betty J. Haggart p. 245). Thus, Haggart was bothered by Cho's sexual advances towards her in March of 1988. She recognized that Cho's attempts to examine her physically were improper acts by a psychiatrist, who should be interested in her mental state.

We conclude that in March of 1988, Haggart possessed the salient facts which triggered her duty to exercise reasonable diligence to further investigate and pursue her cause of action. Just as in *E.J.M., supra,* the discovery rule in the present case did not toll the statute of limitations simply because at the time of her alleged abuse by Dr. Cho, she did not know Cho's alleged actions were causing her psychological harm. Haggart was aware as early as March of 1988, that "something was very wrong with the situation in which [she] found herself." *E.J.M.,* 622 A.2d at 1394.

Our conclusion that the statute of limitation was not tolled until Haggart learned of the transference phenomenon is further supported by a recent decision of our supreme court in *Dalrymple v. Brown,* 549 Pa. 217, 701 A.2d 164 (1997). In that case, Dalrymple alleged that she recovered memories on August 25, 1990, of a sexual assault perpetrated on her as a child in 1968 and 1969. Dalrymple claimed that she had repressed her memories of the assault for over twenty years and first recalled them on August 25, 1990, and filed suit by writ of summons on July 10, 1992. The court refused to apply the discovery rule to toll the applicable statute of limitations in that case and stated the following:

> Regardless of how appellant categorizes repressed memory she cannot escape the fact that the original injury was a battery which is commonly defined at law as a harmful or offensive contact. *Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081, *appeal denied,* 524 Pa. 621, 571 A.2d 383 (1989). In a typical battery all the elements of the offensive touching will be present and ascertainable by the plaintiff at the time of the touching itself. *Id.* Under application of the objective standard it would be absurd to argue that a reasonable person, even assuming for the sake of argument, a reasonable six year old, would repress the memory of a touching so that no amount of diligence would enable that person to know of the injury.

*Dalrymple,* 701 A.2d at 170.

The decision in *Dalrymple, supra,* provides an even stronger reason for rejecting Haggart's discovery rule argument. Unlike the appellant in that case, Haggart is not alleging that she had no memory of the events which gave rise to her cause of action. Rather, Haggart contends she did not know those events amounted to inappropriate treatment which caused her psychological injury. As our Supreme Court emphasized in *Dalrymple,* 701 A.2d at 170: "The very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." (citing *Pocono,* 468 A.2d at 471). As the record reveals, Haggart admits that she was aware that something bothersome and inappropriate was happening to her as early as March of 1988. Neverthe-

less, she failed to exercise reasonable diligence to investigate her cause of action until 1991, when she consulted another therapist.

In sum, we conclude that the 'applicable statute of limitations began to run in March of 1988, when the inappropriate physical contact with Cho allegedly began and Haggart felt something was wrong in her psychotherapeutic relationship. It was then that a reasonable person would possess the salient facts which serve as the basis of this cause of action. Since Haggart did not commence her suit until February 26, 1992, we find that her action is barred by the applicable two-year statute of limitations, and that summary judgment was properly granted in favor of Cho and the Hospital.

Judgment affirmed.