## Matthews v. Roman Catholic Diocese of Pittsburgh

394

C.P. of Allegheny County, no. GD04-002366.

*Alan H. Perer* and *Richard M. Serbin,* for plaintiff.
*Joseph W. Selep* and *William A. Steidle Jr.,* for defendants.

WETTICK JR., *A.J.,* August 3, 2004—Defendants' motion for judgment on the pleadings seeking dismissal of plaintiff's complaint on the ground that plaintiff's claims are barred by the statute of limitations is the subject of this opinion and order of court.

In deciding a motion for judgment on the pleadings, all factual allegations in the pleadings must be construed in a manner most favorable to the party opposing the motion. Thus, the facts set forth in this opinion are based solely on the allegations in plaintiff's amended complaint.

I do not consider the allegations in defendants' answer and new matter which deny many of the allegations in plaintiff's complaint.

According to plaintiff's amended complaint, plaintiff was born in December 1977. On at least three occasions in 1989, he was sexually abused by Father Wellington, a priest assigned to the church which plaintiff and his family attended.

Plaintiff alleges that prior to the dates on which he was sexually abused, Diocesan officials knew or should have known that Father Wellington had sexually molested other children. However, Diocesan officials continued to permit Father Wellington to serve as a priest whose responsibilities would include having contact with children.

Plaintiff alleges that when stories became known nationally in 2002, he first learned that the Catholic Church, including the Pittsburgh Diocese, had a policy of shielding and protecting known pedophilic priests. Until this information was revealed, he would never have suspected that Diocesan officials would have permitted Father Wellington to continue to serve as a priest in plaintiff's church once these officials discovered that Father Wellington had a history of sexually molesting children.

This lawsuit does not raise any claims against the Diocese based on the doctrine of respondeat superior.[1] Plaintiff's claims against the Diocese are based solely on allegations that, after it had notice of allegations and

---

1. Pennsylvania case law holds that a church is not responsible for acts of sexual abuse committed by a minister or priest because such activity is outside the scope of employment. *R.A. v. First Church of Christ,* 748 A.2d 692, 699 (Pa. Super. 2000).

complaints concerning his molesting other children, it allowed Father Wellington to continue to serve as a priest of plaintiff's church where he would be expected, in this role, to have contact with minor parishioners.

These claims raised against the Diocese are governed by a two-year statute of limitations. Plaintiff recognizes that the lawsuit, which was commenced on February 4, 2004, was not filed within two years after he became an adult. He relies on the discovery rule and the concealment doctrine.

The discovery rule is a judicially created exception to the statute of limitations. It tolls the running of the applicable statute of limitations until the time at which plaintiff knew or reasonably should have known that (1) he had been injured and (2) his injury had been caused by another party's conduct. *Weik v. Estate of Brown,* 794 A.2d 907, 909 (Pa. Super. 2002).

Under the discovery rule, the limitations period does not begin to run until it is reasonably possible for a party to discover that he or she has been injured by the act of another. In determining whether to apply the discovery rule to a case, "the court must address the ability of the injured party, exercising reasonable diligence, to know that the party has been injured by the act of another." *Bowe v. Allied Signal Inc.,* 806 A.2d 435, 439 (Pa. Super. 2002). The party seeking to invoke the discovery rule bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence. *Reasonable diligence* is defined as "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Cochran v. GAF Corp.,* 542 Pa. 210, 217, 666 A.2d 245, 249 (1995).

Since the discovery rule's application involves a factual determination as to whether the plaintiff exercised reasonable diligence in discovering the cause of the injury, ordinarily a jury must decide whether the discovery rule applies. However, whenever reasonable minds would not differ in finding that the plaintiff has failed to exercise reasonable diligence, the court shall decide the matter rather than submit it to a jury. *Weik v. Estate of Brown, supra,* 794 A.2d at 909.

In this case, until the stories became known nationally in 2002, plaintiff did not make any inquiries or conduct any investigation as to whether the Bishop or other Diocesan officials had information that Father Wellington had sexually molested other youth prior to the incidents in 1989 that are the subject of this lawsuit. It is defendants' position that I must rule, as a matter of law, that this failure to make any inquiries or conduct any investigation until 2002 bars plaintiff from invoking the discovery rule. Plaintiff, on the other hand, contends that it is for the jury to determine whether, under the facts and circumstances present in this case, his failure to make any inquiries or conduct any investigation constitutes a lack of reasonable diligence in ascertaining the cause of the injury.

There are two grounds for invoking the discovery rule. The first ground is that the existence of the injury was not known and could not have been reasonably ascertained within the limitation period. The second ground is that the plaintiff knew of the injury but, exercising reasonable diligence, did not know the injury was caused by the tortious act of another. This case involves only the second ground. While plaintiff knew of the injury

within the limitation period, it is plaintiff's position that until 2002 he neither knew nor had reason to know that he had been injured by the tortious conduct of the Diocese.

There is no Pennsylvania appellate court case law which provides direction to this court other than the case law's description of the discovery rule that I have previously summarized. I find no merit to defendants' contention that their statute of limitations defense is governed by *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164 (1997), and *Haggart v. Cho*, 703 A.2d 522 (Pa. Super. 1997).

In *Dalrymple v. Brown*, the only issue the court addressed was whether the discovery rule should extend the statute of limitations in a case where the plaintiff claimed that repressed memory of an injury was the cause of the failure to file the action timely. In *Dalrymple*, the plaintiff sought to invoke the discovery rule by using the first ground for invoking the discovery rule: she could not reasonably have known of her injury until that moment when she recovered her repressed memory. The Pennsylvania Supreme Court ruled that Pennsylvania uses a standard of reasonable diligence as applied to a reasonable person; thus, the discovery rule does not apply where it is the incapacity of the plaintiff which causes the delay in bringing suit.

In *Haggart v. Cho*, the plaintiff treated with Dr. Cho, a psychiatrist, between January 30, 1986 and May 3, 1990. Beginning in 1988, Dr. Cho engaged in inappropriate sexual conduct with the plaintiff. In February 1992, the plaintiff sued Dr. Cho and the hospital that referred the plaintiff to Dr. Cho. The trial court, in summary judg-

ment proceedings, dismissed the plaintiff's complaint on the ground that the plaintiff's causes of action were barred by the two-year statute of limitations. The plaintiff argued that the discovery rule applied because she did not become aware that Dr. Cho's conduct was inappropriate treatment which caused her psychological injury until she consulted another therapist in 1991. The Pennsylvania Superior Court ruled that the applicable statute of limitations began to run in March 1988 when, according to the plaintiff's testimony, the inappropriate physical conduct began and the plaintiff felt something was wrong in her psychotherapeutic relationship. The court, citing *Dalrymple,* rejected the plaintiff's contention that she was unable to recognize the true nature of her relationship with Dr. Cho and the harm he had perpetrated on her until her treatment with another therapist.

Neither *Dalrymple* nor *Haggart* is applicable to this case. In this case, plaintiff recognized that he had been abused and was aware of the harmful effects of the abuse many years prior to the date that he filed this lawsuit. He seeks to invoke the discovery rule solely on the ground that he was unaware of the Diocese's role in causing his injuries.

While opinions of other common pleas courts, federal courts, and other state courts are not binding, the parties have cited opinions of these courts favorable to their respective positions in anticipation that I may find the reasoning to be persuasive.

The following three cases, cited by plaintiff, are the most persuasive in support of plaintiff's position that a jury could find that the discovery rule extended the limitation period to at least March 2004:

In *A.L.M. v. Diocese of Allentown,* no. 2004-C-78 (Lehigh Cty. 6/24/04), a court en banc considered motions for judgment on the pleadings filed in six cases arising from claims of sexual abuse allegedly perpetrated on the plaintiffs by clergy assigned to the Diocese of Allentown. The alleged incidents occurred between 1965 and 1982. The plaintiffs did not bring suit against the individual priests who allegedly committed the acts of abuse— the plaintiffs acknowledged that any claims against these priests would be barred by the statute of limitations. Instead, they sued the Diocese and the bishops who served the Diocese during and after the incidents of abuse.

Their claims (which are almost identical to the causes of action raised in the present case) relate to the failure to protect the plaintiffs from "predator priests." The complaints allege that prior to the abuse of the plaintiffs, the Diocese had specific knowledge of the pedophilic tendencies of the offending priests and allowed them to continue to have unsupervised contact with children, including the plaintiffs. The complaints alleged that the plaintiffs did not discover that the defendants were a cause of the abuse before disclosures in 2002, by representatives of the Catholic Church, of sexual misconduct by priests against minors.

The defendants sought dismissal on the ground that each cause of action in the plaintiffs' complaints was barred by the two-year limitation period for personal injury claims. All of the plaintiffs had reached the age of majority more than two years before they filed the cases before the court.

The plaintiffs raised the same arguments in opposition to the defendants' motions for judgment on the plead-

ings based on the statute of limitations that plaintiff is raising in the present case:

"In the cases at issue, the plaintiffs claim that they did not know or have reason to know that the defendants were a cause of their injuries until long after the abuse occurred. The plaintiffs acknowledge that they knew of their injuries at the time of the abuse and that they knew the identities of the individual clerics who abused them. However, they allege that the Diocese and the bishops were a separate cause of their harm, and that they did not know or have reason to know of *this* cause until 2002, when representatives of the Catholic Church disclosed the church's role in concealing incidents of sexual misconduct by priests against minors. . . . The plaintiffs allege that before these disclosures the problem of ongoing sexual abuse within the Diocese of Allentown was concealed by the defendants. Therefore, under the discovery rule, the plaintiffs contend that the statute of limitations did not begin to run until 2002, within two years prior to the filing of these actions." *Id.* at 11-12. (emphasis in original)

The court denied the motions for judgment on the pleadings:

"Based on the allegations in the plaintiffs' pleadings, which we must accept as true at this stage, there remains a factual issue as to when the plaintiffs knew or should have known that the defendants were a cause of their harm. From the pleadings alone we cannot decide this issue. Although the plaintiffs knew of their injuries and of the priests who abused them many years ago, if the plaintiffs' allegations are correct, a question remains as to when the plaintiffs knew or had reason to know that

the defendants were also a cause of their harm." *Id.* at 12.[2]

*Dandley v. Bishop Guertin High School Inc.,* no. 02-C-0170 (N.H. Super., S.D. Hillsborough Cty. 9/25/03), was a civil action for damages for sexual abuse committed against the plaintiff by Brother Beaulieu, a member of the Order of the Brothers of the Sacred Heart, and a teacher at Bishop Guertin High School where the plaintiff was a student. The plaintiff alleged that he was sexually abused between 1972 and 1975. The suit was filed in 2002 against Brother Beaulieu, the Order of the Brothers of the Sacred Heart, and Bishop Guertin High School.

The court dismissed the claims against Brother Beaulieu based on the expiration of the statute of limitations; the court ruled that the discovery rule did not apply because the plaintiff was aware of the abuse. However, the court reached the opposite conclusion with respect to the plaintiff's claims against the institutional defendants. The court said that a cause of action against these defendants would arise if they possessed prior knowledge of Brother Beaulieu's deviant tendencies and failed to take appropriate action. Under the discovery rule, the statute of limitations would not begin to run until the plaintiff knew or should have known that these defendants had such prior knowledge. The court said that it could not find that the plaintiff should have known that these institutional defendants were possible wrongdoers until the recent publicity.

---

2. The court distinguished the plaintiffs' claims against the defendants from claims based on vicarious liability. The court said that the plaintiffs had no recourse against these defendants under a theory of vicarious liability because an employer is not vicariously responsible for actions outside the scope of employment.

*Doe v. Lieberth,* 03-497920 (Cuyahoga Cty., Ohio 5/ 30/03), arose out of alleged sexual abuse of the plaintiff by Father Lieberth, while he was employed by St. Michael's Catholic Church. The alleged abuse occurred in 1986 and the suit was not brought until 2003. The defendants included St. Michael's Catholic Church and the Catholic Diocese of Cleveland. The plaintiff's claims against these institutional defendants were not based on the doctrine of respondeat superior; they were based solely on the defendants' failure to protect the plaintiff from the priest who allegedly assaulted him.

The plaintiff alleged that he did not learn until the spring of 2002 that Father Lieberth had sexually abused another minor in 1985 and that the 1985 incident had been reported to a representative of the Catholic Diocese in that year. According to the plaintiff, this was the alerting event that began the running of the statute of limitations against these defendants.

The court ruled that the discovery rule has two prongs. Under one, the plaintiff must know that the injury occurred. Under the other, the plaintiff must have knowledge of the defendant's wrongful conduct. The statute of limitations does not begin to run until the plaintiff has information sufficient to apprise him of the elements of both prongs. The court said that while the plaintiff knew of the abuse and that Father Lieberth had committed the abuse in 1986, he did not know that his injuries might also have been the result of the negligence of additional parties (defendants Catholic Diocese of Cleveland and St. Michael's Catholic Church). Thus, the court in response to the institutional defendants' motion to dismiss ruled that the plaintiff's claims were not barred by the statute of limitations.

The following three cases, cited by defendants, are the most persuasive in support of defendants' position that this court should rule, as a matter of law, that plaintiff may not invoke the discovery rule:

In *Mark K. v. Roman Catholic Archbishop of Los Angeles,* 67 Cal. App. 4th 603 (Cal. Ct. App. 1998), the alleged abuse occurred in the middle 1970s, and the lawsuit was not filed until 1996. The lawsuit included a claim against the church for negligent supervision/retention. The plaintiff's claim was based on allegations that church officials knew that the priest who committed the abuse had been involved in other sexually inappropriate behavior prior to the abuse that was the subject of the plaintiff's complaint. The plaintiff alleged that he first became aware that the church knew of the prior inappropriate conduct of the priest when an earlier victim of the same priest made public allegations in June 1996.

The court ruled that the plaintiff could not rely on the discovery rule. The court said that the plaintiff knew that the perpetrator was a priest of the church, "thereby obligating plaintiff to determine, as with any employer whose employee has injured a third party, whether the church shouldered some responsibility for the misconduct of its priest." *Id.* at 612.

In *Cevenini v. Archbishop of Washington,* 707 A.2d 768 (D.C. 1998), the plaintiffs alleged that they were abused by a priest during the period between 1975 and 1983 when he was serving as a pastor at St. John's Church. The lawsuits were filed in 1995; the complaints raised claims against the Archbishop for negligent hiring and supervision.

The defendants sought dismissal on the ground that the claims were barred by the statute of limitations. The plaintiffs opposed on the ground that they only recently learned from articles published in the *Washington Post* in February 1995 that the Archdiocese knew of the priest's pedophilic tendencies long before he assumed his pastoral duties at St. John's. The plaintiffs alleged that it was not until the publication of these articles that they had reason to suspect independent wrongdoing by the Archdiocese with respect to the hiring and supervision of the priest.

The court ruled that the plaintiffs could not invoke the discovery rule. The relationship between the priest and the defendants was such that a reasonable plaintiff with knowledge of the misconduct of one would have conducted an investigation as to the other:

"According to their complaints, all three appellants were aware from the outset that it was the Archdiocese that had assigned Father Schaefer to St. John's and that Schaefer's role was that of a subordinate representative of the Archdiocese. It is also undisputed that the alleged acts of abuse occurred on church premises, while Father Schaefer was functioning as a representative of the Archdiocese. In these circumstances, we conclude that a reasonable plaintiff would have investigated his potential claims against the Archdiocese at the same time that his claims accrued against its representative. Because there is no evidence of fraudulent concealment by the Archdiocese, a reasonably diligent investigation would have revealed at least some evidence of wrongdoing on the part of the Archdiocese (assuming arguendo that such wrongdoing had occurred). Consequently, we hold that

appellants' claims against the Archdiocese accrued simultaneously with their claims against Father Schaefer." *Id.* at 773. (footnote omitted)

In *Doe v. Archdiocese of Washington,* 689 A.2d 634 (Md. Ct. Spec. App. 1997), the alleged abuse occurred between 1972 and 1978. The lawsuit was filed in 1995. It included claims against the Archdiocese for negligent hiring, placement, and supervision.

The plaintiff alleged that he had no notice that the Archdiocese knew that one of the priests who had abused the plaintiff was a pedophile until the Archdiocese admitted in 1995 that it was aware of this former priest's misconduct.

The court ruled that the discovery rule did not apply because when the plaintiff was molested, he was immediately on notice of potential claims against the priest as well as the Archdiocese as the priest's employer:

"In sum, Doe failed timely to pursue his claims against the priests and the church. There are no facts alleged that support a claim that Doe could not have discovered the claims against the Archdiocese, if he had ever attempted to do so. In our view, appellant had inquiry notice of his potential claims against the Archdiocese, as the priests' employer. Therefore, for the same reason that the claims against the priests are untimely, his claims against the Archdiocese must fail." *Id.* at 645.

I find the case law upon which plaintiff relies to be consistent with the Pennsylvania appellate court case law governing the discovery rule. Thus, I am denying defendants' motion for judgment on the pleadings because I find that a jury should determine whether the plaintiff

may invoke the discovery rule (assuming that there is sufficient evidence to support plaintiff's allegations).

The case law upon which defendants rely holds that the discovery rule may not be invoked because a person injured by an employee should have reason to suspect that the employer may also have independent responsibility for the injury. I do not find this rationale to be persuasive when the employer is a church which the plaintiff attends and the employee is engaging in activity that may be reasonably viewed as conduct that the church could never tolerate. A jury may find that there is a loud ring of truth to plaintiff's statement that he and his family never approached Diocesan officials to ask whether they had knowingly assigned to their church, to work directly with the parishioners, including young boys, a priest with a history of sexually molesting children, because it would never cross their minds that the church would do so. Under the law, there is no duty of inquiry where there is no reason to suspect that a party's involvement contributed to the injuries; it is for the jury to decide whether the plaintiff exercised reasonable diligence in discovering the cause of his injury unless reasonable minds would not differ in finding that plaintiff failed to exercise reasonable diligence. The argument of counsel for defendants—reasonable minds must find that in 1989 plaintiff and his family should have considered the possibility that the Diocese had assigned to plaintiff's church as its priest a person whom church officials knew to have engaged in sexual activity with children—is based on a portrayal of the church that a jury may not be prepared to accept.

For these reasons, I enter the following order of court:

## ORDER

On August 3, 2004, it is ordered that defendants' motion for judgment on the pleadings, based on the defense that the claims are barred by the statute of limitations, is denied.