## Ingros v. BFG Electroplating & Manufacturing Company

482

C.P. of Jefferson County, no. 131-2005 CD.

*Robert P. Ging Jr.,* for plaintiffs.
*Carmon M. Harvey,* for defendants.

FORADORA, *P.J.*, December 15, 2006—

## INTRODUCTION

Now before the court is a motion for summary judgment filed by defendant BFG Electroplating & Manufacturing Company and joined by third-party defendant First Commonwealth Financial Corporation. They contend that all of the claims asserted by Jon Ingros and Judy

Ingros, plaintiffs, are barred by the relevant statutes of limitations and that their claim under the Hazardous Sites Cleanup Act is further impaired because the statute does not apply retroactively. BFG and Ingros submitted briefs, and the court entertained arguments on November 6, 2006.

## FACTUAL HISTORY

In their complaint, filed February 16, 2005, the plaintiffs assert that metals, volatile organic compounds, and other chemicals were detected in various concentrations on their property. They further assert that concentrations of mercury, nickel, chromium, copper, aluminum, and trichloroethylene (TCE) were discovered in the basement and living areas of the home. These findings, aver the plaintiffs, were documented by the United States Environmental Protection Agency (EPA) in a Superfund Technical Assessment and Response Team report dated December 2003 and by the Pennsylvania Department of Environmental Protection (DEP) in a draft technical directive memorandum prepared in April 2004.

TCE, continues the complaint, was also found in BFG's manufacturing process, located well adjacent to the plaintiffs' property. It and the other compounds and chemicals discovered on their property, they say, are known human health hazards, ecological risks, and carcinogens that BFG discharged into the soils and groundwater without permission. Such discharge, claim the plaintiffs, has harmed them insofar as their property has been stigmatized and rendered valueless by the presence of these known contaminants.

In Count I—trespass—of the complaint, the plaintiffs aver that as a result of BFG's negligence, organic and

inorganic contaminants were discharged onto their property and the soil and water beneath and surrounding their property, thereby diminishing its value. Count II—violations of the Hazardous Sites Cleanup Act—claims that BFG acted in violation of Pennsylvania law, which makes illegal the contaminating conduct in which BFG allegedly engaged and provides a legal remedy for damaged property owners. Finally, the plaintiffs aver in Count III—private nuisance—that the discharges onto their property constitute a nuisance.

In its motion for summary judgment and accompanying brief, BFG argues that the actions for trespass and nuisance must be dismissed as untimely filed. Reminding the court that those causes of action have two-year statutes of limitations, BFG maintains that at the latest, the plaintiffs' causes of action accrued on or about January 25, 2003. BFG also argues that the plaintiffs had to bring their claim under the Hazardous Sites Cleanup Act within 20 years of the contamination's discovery, which BFG avers occurred as early as 1984. Alternatively, BFG says that the statute only became effective in 1988 and does not apply to contamination that occurred before that time.

Attached to the motion were multiple exhibits, including the letters that BFG offered as proof that the plaintiffs knew about the contamination at least by January 25, 2003.

## DISCUSSION

A moving party is only entitled to summary judgment when there exists no genuine issue of material fact such that the party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(b). In making that decision, the court must view all facts and reasonable inferences in the light most favorable to the nonmovant and resolve any doubts

in the nonmovant's favor. *Haggart v. Cho,* 703 A.2d 522, 525 (Pa. Super. 1997).

### Counts I & III—*Trespass and Private Nuisance*

### The "Discovery Rule"

Under 42 Pa.C.S. §5524, actions for trespass and nuisance must be commenced within two years. Pennsylvania courts favor strict application of statutes of limitations. *Kingston Coal Co. v. Felton Mining Co.,* 456 Pa. Super. 270, 278, 690 A.2d 284, 288 (1997). Thus, statutes of limitations generally begin running as soon as the right to institute and maintain suit arises. *Id.*

The law imposes upon a claimant the duty to use all reasonable diligence to be properly informed of the facts upon which a potential right of recovery is based and to timely file suit based upon those facts. *Kingston Coal Co.,* 456 Pa. Super at 278, 690 A.2d at 288. Whether a claimant was reasonably diligent depends upon an *objective* assessment of his or her actions; the person's subjective understanding of his or her responsibilities is irrelevant. *Id.* at 280, 690 A.2d at 289. Moreover, when information is available, a claimant's failure to make proper inquiries constitutes failure to exercise reasonable diligence as a matter of law. *Id.*

Nonetheless, the "discovery rule" protects potential plaintiffs insofar as it tolls the running of a statute of limitations in instances where they were uncertain of their injury and could not have reasonably known at an earlier point in time. As our Supreme Court says it, the "discovery rule" tolls the statute of limitations "until the point where the complaining party knows or reasonably should know that he has been injured and that his injury

has been caused by another party's conduct." *Crouse v. Cyclops Industries,* 560 Pa. 394, 404, 745 A.2d 606, 611 (2000). Once the plaintiff possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs to investigate further to determine whether he has sustained a redressable injury, however, the tolling period ceases and the statute begins to run. *Melley v. Pioneer Bank, N.A.,* 834 A.2d 1191, 1201 (Pa. Super. 2003).

Whether a plaintiff exercised due diligence and discovered his injury within a reasonable amount of time is generally a jury question. *Haggart,* 703 A.2d at 528. That changes, however, when the undisputed facts lead inexorably to the conclusion that the plaintiff did not act reasonably. *Id.* Then the question of due diligence can be decided by the court as a matter of law. *Id.; Murphy v. Saavedra,* 560 Pa. 423, 426, 746 A.2d 92, 94 (2000). Because the record clearly demonstrates that more than two years before the plaintiffs instituted this lawsuit, they possessed sufficient critical facts to put them on notice not only that their property was contaminated, but also that BFG may have caused the contamination, they cannot now, as a matter of law, take advantage of the "discovery rule".

Rule 1035.1 governs what constitutes the "record" for purposes of summary judgment proceedings; it specifies that pleadings, depositions, answers to interrogatories, admissions and affidavits, and filed reports signed by an expert witness may be considered. *Id.* Within those parameters, BFG offers interrogatories directed to the plaintiffs and the affidavit of Jon Ingros. That affidavit, by itself, leaves no doubt that the plaintiffs were sufficiently on notice of both their injury and what they

deemed its likely cause more than two years before filing the instant complaint.

In the first numbered paragraph of his affidavit, Ingros makes the legal conclusion that he only became aware that he had a cause of action against BFG in April 2004. Subsequent paragraphs belie that conclusion, however. Paragraphs 2 through 4 demonstrate that in 2001, the plaintiffs were in possession of the Stewart Lab reports documenting the contamination on the plaintiffs' property and believed that BFG was the cause of that contamination firmly enough that Ingros confronted BFG's president, Jeffrey Grube, with those reports. In fact, it was not until March 17, 2003 that the plaintiffs received word from the DEP and EPA that BFG may not have caused the contamination. (Affidavit of Jon Ingros, ¶8.) However, the fact of the contamination remained, and the necessary corollary to the statement that BFG *may not have* caused the contamination was that BFG *may have* caused the contamination. Yet the plaintiffs chose not to sue BFG either in 2001 or any time thereafter until they filed their complaint on February 16, 2005.

In the final numbered paragraph of his affidavit, Ingros avers that in April 2004, after meeting with Nathan Walker of the DEP, he finally became aware that BFG was the most likely cause of the contamination on the plaintiffs' property and thereafter obtained counsel and filed this lawsuit. As evidenced by this averment and his arguments in opposition to BFG's motion for summary judgment, the plaintiffs apparently assume that they did not become sufficiently aware that they had a cause of action against BFG until confronted with the proposition that BFG was the "most likely" cause of their alleged injury. But as the above cited precedents make clear, the

law does not require that level of certitude before it deems a cause of action to have accrued.

The inapplicability of the "discovery rule" is further evidenced by the letter dated January 25, 2003, wherein Ingros details the plaintiffs' efforts to locate the contamination and its source, as well as his continued belief that BFG is responsible for the contamination.[1]

The plaintiffs knew as early as 2001 that their property was contaminated, and certainly by January 25, 2003. They believed as early as 2001 that BFG had released the contaminants and continued to believe that in 2003. Clearly they possessed sufficient critical facts leading them to further investigate the problem, see *Melley*, 834 A.2d at 1201, and Ingros' affidavit and the letter authored by him show that the plaintiffs did indeed continue investigating at that time. Therefore, they were objectively aware that they had a cause of action as early as 2001. Their subjective feeling that they did not possess enough information to sue BFG until hearing that it was "most likely" the cause of the contamination on their property did not toll the statute of limitations. Once the critical facts were within the plaintiffs' knowledge, *i.e.,* in the year 2001, the statute began to run. To conclude otherwise would contravene the statute of limitations' purpose of providing repose to BFG. See *Kingston Coal Co.,* 456 Pa. Super. at 278, 690 A.2d at 288 ("Statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right

1. As opposed to being an unauthenticated document purporting to be a letter personally written by Ingros, that letter was attached as an exhibit to interrogatories that BFG directed to the plaintiffs. In interrogatory no. 3, Ingros unequivocally admits that he wrote the letter to Governor Edward Rendell. As part of the interrogatories, therefore, the letter becomes a valid document for the court's consideration.

of potential defendants to repose; and (3) administrative efficiency and convenience."). The plaintiffs knew in 2001 that they were injured. They believed in 2001 that BFG had caused their injury and never received any definitive evidence to the contrary. They were thus obligated by law to bring suit against BFG, and it was BFG's right to have suit brought against it, no later than 2003. Their failure to do so was objectively unreasonable and constituted a failure of due diligence. As a matter of law, therefore, the plaintiffs are precluded from asserting the "discovery rule" to justify their untimely filing of this suit.

## Fraudulent Concealment

The plaintiffs also argue that BFG is precluded by the doctrine of fraudulent concealment from successfully asserting a statute of limitations defense.

Where the parties dispute whether the defendant made certain allegedly fraudulent and concealing remarks, the decision whether the remarks were made lies with the jury. *Fine v. Checcio,* 582 Pa. 253, 270-73, 870 A.2d 850, 860-62 (2005). Here, however, BFG does not deny that Jeffrey Grube informed Ingros that BFG did not use the chemicals found on his property, but that they were utilized by a string of coke ovens that had operated a few miles away at the turn of the century. (Affidavit of Jon Ingros, ¶¶2-3.) Consequently, that conversation stands as established fact upon which the court can decide whether BFG engaged in fraudulent concealment.

The doctrine of fraudulent concealment functions as a remedy based in estoppel and precludes a defendant from effectively pleading the statute of limitations if he, through fraud or concealment, causes the plaintiff to relax his vigilance or deviate from his right of inquiry

into the facts. *Fine,* 582 Pa. at 270-71, 870 A.2d at 860. The doctrine encompasses both intentional and unintentional deception, and its applicability is for the plaintiff to prove by clear, precise, and convincing evidence. *Id.* The presiding court may determine whether established facts create an estoppel situation.

The court finds in BFG's favor. Ingros' affidavit demonstrates that Grube's statements, even if they were deceiving, did not cause the plaintiffs to relax their vigilance or deviate from their right of inquiry into the facts. Rather, after speaking with Grube, the plaintiffs actively continued their investigation, among other things contacting the DEP and EPA for further investigation into what the plaintiffs already thought they knew. (Affidavit of Jon Ingros, ¶4.) Thus, the plaintiffs have themselves established that even if Grube's statements were somehow deceiving, they did not result in diminished vigilance on the part of the plaintiffs.

### Count II—Violation of the Hazardous Sites Cleanup Act

The Hazardous Sites Cleanup Act, 35 P.S. §6020.101 et seq., attempts to ensure that hazardous substances do not get released into the environment. Section 6020.102. Section 6020.1115 creates a mechanism for citizen suits when the release of hazardous substances causes or threatens to cause personal injury or property damage. *Id.* The Act includes its own statute of limitations in section 6020.1114, the meaning of which the parties dispute.

Section 6020.1114 states in relevant part:

"Notwithstanding the provisions of any other statute to the contrary, actions for civil or criminal penalties under this act or civil actions for releases of hazardous

substances may be commenced at any time within a period of 20 years from the date the unlawful conduct or release is discovered."

The plaintiffs argue that the 20 years only began to run after they discovered the contamination on their property, while BFG maintains that the statutory period began when the EPA first discovered the contamination in 1984 or 1985.[2] The court agrees with BFG's interpretation.

The purpose of all statutory interpretation is to ascertain and effectuate the intention of the legislature, 1 Pa.C.S. §1921(a), and the best indication of that intent is the plain language of the statute. *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004). And because the court assumes that the legislature did not intend an absurd or unreasonable result when drafting a statute, statutory interpretation should examine the practical consequences of an interpretation. *Piroli v. Lodico,* 909 A.2d 846, 852 (Pa. Super. 2006).

The statute specifies that suit may be brought within twenty years "from the date the unlawful conduct or release *is discovered.*" 35 P.S. §6020.1114. (emphasis added) It contains no qualifying language indicating a particular person or entity whose discovery commences the limitations period. Specifically, it does not allow for 20 years after the first homeowner discovers the unlawful conduct or release that affected his or her property. Rather, the language is general; it indicates that the limitations period begins to run once the unlawful conduct or release is discovered *by anyone.*

2. BFG specifically maintains that the initial discovery occurred either in 1984 or, in any event, before February 16, 1985, and thus that the plaintiffs' suit was untimely filed either way.

Additionally, the plain language of the statute indicates that the statute of limitations begins to run when the unlawful conduct or release is discovered, period, and not when it is discovered on a particular parcel of property.

The plaintiffs blame BFG for the contamination of their property. Their claim comes too late. The record shows that hazardous substances released by BFG were discovered on BFG's property in 1984 or 1985. Ingros' letter to Governor Rendell makes reference to that event, and the plaintiffs admit as much in paragraph seventeen of their response to defendant's motion for summary judgment. The plaintiffs now claim that the contamination originally released by BFG has infiltrated their property—a discovery they made less than 20 years ago. However, section 6020.1114 says that it is the discovery of the unlawful conduct or release, in and of itself, that triggers the statute of limitations, not the discovery that the unlawful conduct or release has adversely affected a particular piece of property.

Adopting the plaintiffs' interpretation of section 6020.1114 would lead to the unreasonable result of a potentially unlimited period of liability for defendants. The plaintiffs argue otherwise, maintaining that once discovery is made by the first homeowner—here the plaintiffs—successive owners of the property are put on notice of the contamination and do not get an additional 20 years to commence suit should they rediscover it for themselves. While the argument is appealing on its face, however, it is ultimately unconvincing. First, even this scenario does not comport with the plain meaning of the statute. Second, the plaintiffs' argument does not guarantee defendants repose within any reasonable period of time.

Suppose one homeowner discovers the unlawful conduct or release and simply does not care enough to report her discovery. Or suppose another homeowner makes the discovery and accepts a closed-door settlement offer from the entity that engaged in the unlawful conduct or release. Under either scenario, the plaintiffs' argument breaks down, because even though both homeowners have discovered the unlawful conduct or release, neither has taken steps to put others on notice that such a discovery was made. The plaintiffs' argument, then, necessarily becomes that the 20-year period begins to run only after the unlawful conduct or contamination is discovered *by the first homeowner who makes a public record of his or her discovery.* Under that proposition, a would-be defendant who violates the Act faces a potentially limitless limitations period during which he can be held liable for his conduct. As evidenced by the enactment of statutes of limitations, the legislature has deemed that result unacceptable.

The 20-year statute of limitations contained in the Act far exceeds most statutes of limitations. The court can only conclude that the legislature acted very deliberately in that regard, understanding that hazardous substances released into the soil and water could take years to migrate and contaminate properties downstream. With that recognition, the legislature gave potential plaintiffs 10 times as long to commence an action as the typical personal injury or property damage plaintiff enjoys. Discovery of the unlawful conduct or release of the contamination that allegedly affected the plaintiffs' property occurred in 1984 or 1985. The plaintiffs then had until 2004 or 2005 to bring the instant suit.[3] Section

---

3. Because the plaintiffs acknowledged and agreed with BFG's assertions concerning the time of initial discovery of the contamination,

6020.1114 thus precludes their claim under the Hazardous Sites Cleanup Act.

The date of the Act's enactment also forbids maintenance of this suit under its provisions. The legislature specified in 1 Pa.C.S. §1926 that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." *Id.* Expounding upon the effect of section 1926 and statutes generally, our Supreme Court has long held that a statute containing general language that may be susceptible to retroactive *and* prospective application will be held to be prospective only. *E.g., Krenzelak v. Krenzelak,* 503 Pa. 373, 380, 469 A.2d 987, 990 (1983); *Horn v. Brannen Manufacturing Co. v. Steelman,* 215 Pa. 187, 189, 64 A. 409, 410 (1906).

The Hazardous Sites Cleanup Act was signed into law on October 18, 1988. It became effective 60 days later. The discovery of BFG's unlawful conduct or release occurred three to four years before that. Nowhere in the Act does the legislature indicate that it was intended to operate retroactively. It thus may not be employed to penalize BFG for conduct that occurred years before its enactment.

## ORDER

And now, December 15, 2006, for the reasons articulated in the foregoing opinion, it is hereby ordered and decreed as follows:

The summary judgment motion brought by defendant BFG Electroplating & Manufacturing Company and joined by defendant First Commonwealth Financial Corporation is granted.

and having offered no reason for delay that might have functioned to excuse a strict application of the statute of limitations, they were obligated to file suit prior to February 16, 2006.