## C.J.M. v. Archdiocese of Philadelphia

*Stewart J. Eisenberg* and *Jay N. Abramowitch,* for plaintiffs.

*Timothy R. Coyne,* for defendants.

NEW, *J.,* August 13, 2004—The statutory violation/ negligence per se and intentional failure to supervise claims are dismissed. Plaintiffs' other claims are barred by the applicable two-year statute of limitations. Consequently, the defendants' motions for judgment on the pleadings are granted.

## PROCEDURAL AND FACTUAL HISTORY

From January to May 2004, plaintiffs commenced lawsuits against various religious authorities. Plaintiffs allege, during their childhood, they were abused by various priests and, in some cases, a former nun,[1] (priests) employed by the Archdiocese of Philadelphia.[2] The earliest allegation of abuse is alleged to have occurred in 1957, while the latest allegation occurred in 1983. At the time of their abuse, plaintiffs ranged in age from 10 to 18. At the time their complaints were filed, plaintiffs were between the ages of 34 and 61.

For the purposes of this opinion, the plaintiffs will be divided into two groups. The first group of plaintiffs[3]

---

1. During their childhood, plaintiffs McNeila, Nolan, Meehan, and Nolan Sr. were sexually abused by their teacher Eileen Rhoads, a former nun with the Servants of the Immaculate Heart of Mary. (McNeila compl. ¶¶1, 30, 65; Nolan compl. ¶¶ 1, 30, 64; Meehan compl. ¶¶1, 30, 64; Nolan Sr. compl. ¶¶ 1, 30, 65.)

2. The court accepts plaintiffs' allegations as the truth for the purposes of these motions. *Bata v. Central-Penn National Bank,* 423 Pa. 373, 378, 224 A.2d 174, 178 (1966).

3. On June 16, 2004, pursuant to the parties' agreement, the following 17 cases were consolidated for discovery and pretrial purposes:

admit they knew they suffered an injury at the time the abuse occurred. (Pl.'s compl. ¶93.)[4] These plaintiffs sued both the Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua (Archdiocesan defendants). Presently, the Archdiocesan defendants move for judgment on the pleadings. The second group consists of one plaintiff, Rocco J. Parisi Jr. According to his complaint, Parisi was unable to recall the abuse until 2002 due to "spiritual duress." (Parisi compl. ¶23, 54.) Parisi sued both the Archdiocesan defendants[5] and his alleged abuser, Reverend Gallagher. Both the Archdiocesan defendants and Reverend Gallagher move for judgment on the pleadings in this case.

Plaintiffs claim it was not until the disclosures discussed below that they realized the Archdiocesan defendants were a responsible party. This realization has caused

---

*C.J.M. v. Archdiocese of Philadelphia,* no. 0401-4048 [lead case]; *Dolan v. Archdiocese of Philadelphia,* no. 0401-4050; *McDonnell v. Archdiocese of Philadelphia,* no. 0401-4052; *D.P.A. v. Archdiocese of Philadelphia,* no. 0402-4335; *P.M.B. v. Archdiocese of Philadelphia,* no. 0403-5300; *McNeila v. Archdiocese of Philadelphia,* no. 0403-5301; *Nowacky v. Archdiocese of Philadelphia,* no. 0403-5303; *Dietz Jr. v. Archdiocese of Philadelphia,* no. 0403-5304; *Nolan v. Archdiocese of Philadelphia,* no. 0403-5305; *C.T.G. v. Archdiocese of Philadelphia,* no. 0403-5298; *Coleman v. Archdiocese of Philadelphia,* no. 0405-1435; *Crothers v. Archdiocese of Philadelphia,* no. 0405-1436; *Downing v. Archdiocese of Philadelphia,* no. 0405-1439; *Walsh v. Archdiocese of Philadelphia,* no. 0405-1440; *Meehan v. Archdiocese of Philadelphia,* no. 0405-1441; *Doe 3 v. Archdiocese of Philadelphia,* no. 0405-1457; *Nolan Sr. v. Archdiocese of Philadelphia,* no. 0405-3130.

4. For ease of reference, the court will refer to plaintiff C.J.M.'s complaint throughout this opinion unless specified otherwise.

5. Included in the Archdiocesan defendants in the *Parisi* case is St. Monica Roman Catholic Church and the estate of Cardinal John Krol.

them new harm and exacerbated their original injuries from the abuse. (Pl.'s compl. ¶¶93, 97(f).)

• In February 2002, the Archdiocese of Philadelphia acknowledged the existence of allegations of sexual and/or physical abuse against at least 35 priests within the Archdiocese. (Pl.'s compl. ¶68.)

• On June 13, 2002, the president of the United States Conference of Catholic Bishops made certain statements regarding the Catholic Church's response to the victims of "priest abusers."[6] (Pl.'s compl. ¶66.)

• In November 2003, plaintiff John Patrick McDonnell met with representatives of the Archdiocesan defendants and they provided him with his abuser's employment history.[7]

• In December 2003, the Archdiocese of Philadelphia announced it removed four of its own priests who had abused children. (Pl.'s compl. ¶72.)

---

6. Specifically, the president, Bishop Wilton B. Gregory, stated as follows: "[w]e are the ones, whether through ignorance or lack of vigilance, or—God forbid—with knowledge, who allowed priest abusers to remain in ministry and reassign them to communities where they continue to abuse. We are the ones who chose not to report the criminal actions of priests to the authorities, because the law did not require this. We are the ones who worried more about the possibility of scandal than in bringing about the kind of openness that helps prevent abuse. And we are the ones who, at times, responded to the victims and their families as adversaries and not as suffering members of the church." (Pl.'s compl. ¶72.)

7. Plaintiffs John Patrick McDonnell, Alex Joseph McDonnell, Brian Francis McDonnell, and Coleman did not know about the harm resulting from the Archdiocesan defendants' concealment and misconduct until learning about their abuser's employment history in November 2003. (McDonnells' compl. ¶¶74-75, 89; Coleman compl. ¶¶66-67, 83.)

• On February 12, 2004, a newspaper article was published in the *Delaware County Daily Times* regarding Eileen Rhoads' arrest for sexually abusing a minor in 1969.[8]

• On January 31, 2004, an article was published in the *Philadelphia Daily News* regarding the earlier 2004 lawsuits that had already been filed by some of the plaintiffs.[9]

Based on the above-referenced disclosures, plaintiffs argue the statute of limitations began to run anywhere from 2002 to 2004 on their cases. In contrast, Parisi does not specify what event, if any, triggered his recollection of the abuse; however, he was able to recall the abuse in 2002. (Parisi compl. ¶54.)

## LEGAL ANALYSIS

According to the Pennsylvania Rules of Civil Procedure, "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for a judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is in the nature of a demurrer as it gives the means to test the legal sufficiency of the pleadings. All of the plaintiffs'

---

8. Plaintiffs McNeila, Nolan, and Nolan Sr. claim they did not know about the Archdiocesan defendants' concealment and misconduct until February 12, 2004, when they read this article. (McNeila compl. ¶¶82, 94; Nolan compl. ¶¶81, 93; Meehan compl. ¶¶79, 91; Nolan Sr. compl. ¶¶80, 92.)

9. This article led other plaintiffs, namely C.T.G., Nowacky, Dietz, Doe 3, Downing, and Crothers, to realize they had a cause of action against the Archdiocesan defendants. See C.T.G. compl. ¶¶91-92; Nowacky compl. ¶¶68-69; Dietz compl. ¶¶70, 72; Doe 3 compl. ¶¶66, 78; Downing compl. ¶¶67, 79; Crothers compl. ¶¶66, 78.

allegations must be taken as true for the purposes of a motion for judgment on the pleadings. In addition, the motion should be granted where the law is clear and trial would be "a fruitless exercise." *Bata v. Central-Penn National Bank,* 423 Pa. Super. 373, 378, 224 A.2d 174, 178 (1966). It is well-settled that judgment on the pleadings is appropriate if there are no disputed issues of fact. *Williams by Williams v. Lewis,* 319 Pa. Super. 552, 555, 466 A.2d 682, 683 (1983).

## I. *Statutory Violation/Negligence Per Se Claim*

Both groups of plaintiffs allege the Archdiocesan defendants violated the Child Protective Services Law by failing to report allegations of sexual child abuse to the proper authorities. (Pl.'s compl. ¶99.) The Child Protective Services Law requires members of the clergy to report child abuse. However, clergy members were added to the list of reporters via an amendment effective July 1, 1995. See 23 Pa.C.S. §6311 (2004). Since all the incidents of sexual abuse occurred prior to 1995, the Archdiocesan defendants were not required to report those incidents of abuse. Therefore, the statutory violation/negligence per se claim is dismissed.[10]

## II. *Intentional Failure To Supervise Claim*

The first group of plaintiffs also allege the Archdiocesan defendants intentionally failed to supervise the abuser priests within the church. (Pl.'s compl. ¶¶175-179.) However, Pennsylvania does not recognize a cause

---

10. Plaintiffs' counsel withdrew these allegations based on the Lehigh County Court of Common Pleas decision in *A.L.M. v. Diocese of Allentown,* no. 2004-C-78 (Lehigh Cty. 2004). (Tr. p. 47.)

of action for the intentional failure to supervise a cleric. *Hutchinson ex rel. Hutchinson v. Luddy,* 763 A.2d 826, 837 (Pa. Super. 2000). Therefore, the plaintiffs' intentional failure to supervise claim is dismissed.

## III. *Group I Plaintiffs*

### A. Statute of Limitations As to the Archdiocesan Defendants

Defendants allege the plaintiffs' claims are barred by the two-year statute of limitations. See 42 Pa.C.S. §5524 (1)(2)(7) (2004).[11] "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the statute of limitations . . . ." *Pocono International Raceway Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983) (citing *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964); *Bell v. Brady,* 346 Pa. 666, 31 A.2d 547 (1943)). A person asserting a claim is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based

---

11. The following actions and proceedings must be commenced within two years:

"(1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious process of abuse.

"(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another. . . .

"(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter."

and to institute suit within the prescribed statutory period. *Id.*

The law, however, recognizes an exception to the principle that an action will be barred if not filed within the statute of limitations. This exception is known as the "discovery rule" and can act to toll the statute of limitations. "The 'discovery rule' provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa. Super. 449, 454, 622 A.2d 1388, 1391 (1993) (quoting *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1042-43 (1992)). The statute begins to run when the injured party "possess[es] sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Haggart v. Cho,* 703 A.2d 522, 526 (Pa. Super. 1997) (quoting *A. McD. v. Rosen,* 423 Pa. Super. 304, 308, 621 A.2d 128, 130 (1993)).

In the cases sub judice, the most recent allegation of sexual abuse was by plaintiff C.J.M. in 1983, which occurred over 20 years ago. The plaintiffs admit they were aware they were injured at the time of their abuse. (Pl.'s compl. ¶93.) The plaintiffs also knew, at the time of their abuse, both the identity of the priests and the priests' relationship to the Archdiocese of Philadelphia. Since plaintiffs did not file their complaints until 2004, a minimum of 21 years later based on the most recent allegation, plaintiffs' claims are barred by the statute of limitations unless the discovery rule is applicable.

## 1. *The discovery rule exception*

Plaintiffs argue the discovery rule tolls the statute of limitations in their cases. As stated previously, "[t]he 'discovery rule' provides that where *the existence of the injury* is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *E.J.M.,* 424 Pa. Super. at 454, 622 A.2d at 1391 (quoting *Hayward,* 530 Pa. at 325, 608 A.2d at 1042-43). (emphasis added) The discovery rule applies "in only the most limited of circumstances, where the plaintiff, . . . despite the exercise of reasonable diligence, [was unable to] discover his or her injury or its cause." *Id.* at 458-59, 622 A.2d at 1393.

Here, plaintiffs admit they were injured and were aware of their injuries at the time they were abused. (Pl.'s compl. ¶93.) Nonetheless, plaintiffs claim they were unaware of the Archdiocesan defendants' tortious acts until the various disclosures that occurred in 2002 through 2004. Therefore, plaintiffs allege the discovery rule must apply since they could not have, despite the exercise of reasonable diligence, discovered the Archdiocesan defendants' role in the batteries performed on them by the priests.

Our Supreme Court's decision in *Dalrymple v. Brown,* 549 Pa. 217, 701 A.2d 164 (1997), is highly instructive. Although the holding in *Dalrymple* concerns repressed memory,[12] our Supreme Court provides us with a complete and thoughtful analysis of the statute of limitations

---

12. See our discussion below in part IV.

and its applicability in our Commonwealth. After extensive review of the law of the statute of limitations and the discovery rule exception, our Supreme Court held the Commonwealth of Pennsylvania favors a strict application of the limitations period, following an objective approach and "focusing on the *nature of the injury* rather than the particularities of the specific plaintiff." *Dalrymple,* 549 Pa. at 231, 701 A.2d at 171. (emphasis added) (footnote omitted)

Applying this law to the cases before us, we must determine whether the plaintiffs were unable to discover their injuries and its cause within the applicable time period. Plaintiffs' allegations against the Archdiocesan defendants are for failing to supervise, failing to warn, concealing information, and other actions which could have prevented the batteries from happening. The Archdiocesan defendants' actions prior to the batteries in and of themselves did not cause the actual injury to the plaintiffs. Although the Archdiocesan defendants' actions may have placed the priests in a position to commit the batteries, it was the actions of the priests which caused the actual injury. The actions of the Archdiocesan defendants were not the primary, or even concurrent, cause of injury to the plaintiffs. While the Archdiocesan defendants' actions may have contributed to plaintiffs' initial injuries, they did not create a new injury, a creeping injury, or alter the cause of the injury. The Archdiocesan defendants' actions, although compensable claims of action, were a secondary cause of action related to the injury brought about by the battery itself. Plaintiffs admit they knew they were injured as a result of the battery. The harm caused to the plaintiffs occurred at the moment of

the battery and was a result of the battery. Although the Archdiocesan defendants may have contributed to that harm by their prior actions, the statute of limitations must be deemed to begin to run at the time of the harm. Where the cause of harm is a battery, a plaintiff will ordinarily know all he needs to know at the moment the battery occurs. *Levenson v. Souser,* 384 Pa. Super. 132, 146-47, 557 A.2d 1081, 1088 (1989), *allocatur denied,* 524 Pa. 621, 571 A.2d 383 (1989).

This court has been unable to find any appellate authority for the proposition the statute of limitations is tolled as to an individual defendant's tortious acts, even though the plaintiff is aware that he has suffered an injury and is aware of the cause of that injury. Plaintiffs would have us interpret the word "cause" to mean an individual "cause of action." Pennsylvania's interpretation of the discovery rule has never extended that far and should not be so extended.

In addition, plaintiffs have not shown in their pleadings that they have used any diligence, let alone reasonable diligence, to be properly informed of the facts and circumstances of their injury. Upon the actions of the priests, plaintiffs had a duty to investigate to determine if parties other than the priests were involved. The plaintiffs do not allege in their pleadings any such investigation took place or was even attempted. Although they knew an injury had occurred and the cause of the injury, plaintiffs waited over 20 years to determine all the parties involved. Plaintiffs knew, or should have known, at the time of the battery that they had a valid legal action and an obligation at that time to investigate to determine all causes of action against all parties.

At oral argument, plaintiffs' counsel argued the Superior Court's decision in *Cappelli v. York Operating Co. Inc.,* 711 A.2d 481 (Pa. Super. 1998), stood for the proposition that an unknown co-defendant could be sued after the statute of limitations had run because a reasonable investigation would not have disclosed the fact that the third party was responsible for the plaintiffs' injuries. (Tr., pp. 37-40.) However, *Cappelli* is distinguishable because it is a "creeping disease" case.[13] 711 A.2d at 486. Applying the statute of limitations test in a creeping disease case, the Superior Court stated the plaintiffs' claim accrued when they knew they had been *further* injured and their injuries were caused by the third party's conduct. *Id.* Indeed, a close reading of *Cappelli* shows it to be favorable to the Archdiocesan defendants' position. The Superior Court in *Cappelli* specifically states, if the defendant was alleged to have caused the initial injury, the plaintiff's claim would have been time-barred. *Id.* at 484. Here, the plaintiffs specifically allege the Archdiocesan defendants' actions led to the initial injury caused by the priests. There is no allegation that, when the abuse ended, the plaintiffs suffered any further harm, until the statements of 2002.[14]

Plaintiffs also cite the case of *Blaine v. York Financial Corporation,* 847 A.2d 727 (Pa. Super. 2004). This case is inapplicable. In *Blaine,* the defendant purposefully concealed the name of the proper defendant until after

---

13. Our courts have traditionally limited the discovery rule to unknown injuries (*i.e.* a sponge accidentally left in a person's body after surgery), creeping diseases which result from continuous exposure to hazardous substances (*i.e.* asbestosis), and damages which are not ascertainable (*i.e.* structural defects). See *Dalrymple,* 701 A.2d at 170.

14. See part III, section B.

the statute of limitations had run. A complaint had been properly filed within the statute of limitations but had named the wrong defendant. As a result, plaintiffs filed a motion to amend complaint in order to correct name of defendant. The court found, if a defendant actively misleads a plaintiff into believing the correct defendant has been sued, the complaint may be amended to name the correct defendant.[15] *Blaine,* 847 A.2d at 728, 730. In contrast, plaintiffs in the cases sub judice are not moving to amend a complaint. Moreover, plaintiffs are not attempting to correct misinformation provided to them by the Archdiocesan defendants, nor are plaintiffs seeking to replace the priests' names with that of the Archdiocesan defendants. Thus, the *Blaine* case has no bearing on the issues before us.

There can be no question the plaintiffs knew they had a right to institute and maintain a suit as to the priests who committed the battery within the statute of limitations. There can be no question the plaintiffs knew, or should have known, of the relationships between the priests and the Archdiocese of Philadelphia. Furthermore, there can be no question the plaintiffs had a duty to use reasonable diligence to investigate the facts and circumstances of their injury, including the Archdiocesan defendants' relationship to the batteries within the statute of limitations, which they did not do. Therefore, plaintiffs' cause of action arose at the time of the abuse itself, not when the various disclosures were made in 2002 through 2004. Since plaintiffs knew of the existence of

---

15. It should be noted that this court does not find in the pleadings of the plaintiffs any factual claims that the Archdiocesan defendants actively misled the plaintiffs as to their injury or the cause of their injury.

their injury at the time of the battery, the discovery rule is inapplicable.

## 2. *The doctrine of fraudulent concealment*

Plaintiffs also assert the Archdiocesan defendants fraudulently concealed prior incidents of sexual abuse of minor parishioners within the Archdiocese. In particular, plaintiffs' counsel cites *Blaine* as precedence that a defendant's fraudulent concealment tolls the statute of limitations.[16] The Archdiocesan defendants maintain their argument that plaintiffs' claims are barred by the two-year statute of limitations.

A party's fraudulent concealment can toll the statute of limitations. *E.J.M.*, 424 Pa. Super. at 461-62, 622 A.2d at 1395. Fraudulent concealment is defined as: "[w]here, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations. . . . Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. . . . Mere mistake, misunderstanding or lack of knowledge is insufficient however, . . . and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Id.* (quoting *Molineux v. Reed,* 516 Pa. 398, 402-403, 532 A.2d 792, 794 (1987)).

The "reasonable diligence" standard for determining the application of the discovery rule is the same thresh-

---

16. As discussed earlier, *Blaine* is distinguishable from our cases.

old test for determining whether the doctrine of fraudulent concealment tolls the statute of limitations. "Whether the statute of limitations is tolled because of the discovery rule or the doctrine of fraudulent concealment, it begins to run as soon as the plaintiff, exercising reasonable diligence, knew or should have known of the injury and its cause." *Bailey v. Abbott,* 51 D.&C.4th 103, 110 (Mercer Cty. 2001) (quoting *Bohus v. Beloff,* 950 F.2d 919 (3d Cir. 1991)). As mentioned earlier, plaintiffs admit they knew they were aware of their injuries at the time they were sexually abused as children, yet plaintiffs did not exercise reasonable diligence in pursuing their legal claims. Plaintiffs did not commence any lawsuits against the Archdiocesan defendants until 2004. For the reasons stated previously concerning the discovery rule, plaintiffs' claims must be denied for failure to exercise due diligence in pursuing their legal claims.

Even assuming arguendo that plaintiffs exercised reasonable diligence, they have not met the elements of fraudulent concealment. "[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." *Kingston Coal Co. v. Felton Mining Co. Inc.,* 456 Pa. Super. 270, 284, 690 A.2d 284, 291 (1997) (citing *Krevitz v. City of Philadelphia,* 167 Pa. Commw. 412, 421-22, 648 A.2d 353, 357 (1994)). Thus, in determining whether the doctrine of fraudulent concealment tolls the statute of limitations, the court must focus on two prongs: whether there has been some affirmative independent act of concealment on behalf of the Archdiocesan defendants, and, if so, whether plaintiffs justifiably relied on that affirmative independent act of concealment.

As to the first prong, plaintiffs' counsel list no affirmative independent act of concealment which they allege is applicable to an individual plaintiff, despite listing numerous acts which were "systematic." Plaintiffs never allege there were specific "acts of concealment" directed towards their own abuse. As an example, plaintiffs allege the fraudulent concealment of the identity of other priests accused of abuse prevented plaintiffs from bringing lawsuits against the priests who abused them. (Pl.'s compl. ¶172.) Whether plaintiffs knew the names of other priests accused of abusing other minor parishioners does not affect plaintiffs' ability to exercise reasonable diligence as to their own lawsuits. Not one plaintiff alleges he did not know the name of his abuser at the time of the abuse, or that the Archdiocesan defendants attempted to conceal the name of his abuser from him. Once plaintiffs knew they were injured, they had a duty to exercise reasonable diligence in investigating any potential claims regarding the abuse. Since they did not exercise reasonable diligence, plaintiffs cannot use the doctrine of fraudulent concealment to toll the statute of limitations.

Plaintiffs further allege, "[t]he effect of these practices by the Archdiocesan defendants was to create *the misperception in the mind of plaintiff[s]* that the plaintiff[s] w[ere] safe with priests in general and with . . . [their priest] in particular, and that, if there was a conduct about which plaintiff[s] might be concerned, it was an isolated incident of spurious conduct, when in fact plaintiff[s] w[ere] the victim of a known and preventable hazard that the Archdiocesan defendants had created and/or allowed to continue." (Pl.'s compl. ¶46.) (emphasis added) Plaintiffs' misunderstanding does not constitute fraudulent

concealment. *E.J.M.*, 424 Pa. Super. at 461, 622 A.2d at 1395.

As to the second prong regarding whether plaintiffs justifiably relied on the affirmative act of concealment, again, plaintiffs rely on general statements. Not one complaint alleges a plaintiff spoke to an official of the Archdiocese within the period of the statute of limitations and was misled by that official.[17] Plaintiffs have not shown, through fraud or concealment, the Archdiocesan defendants caused them to relax their vigilance or deviate from their right of inquiry. At most, the allegations reveal the Archdiocesan defendants' nondisclosure of prior incidents of sexual abuse within the Archdiocese. The Archdiocesan defendants' nondisclosure does not constitute fraudulent concealment. *Krevitz,* 167 Pa. Commw. at 421, 648 A.2d at 357 (citing *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967); Dobbs on Remedies §2.3) ("[M]ere silence or nondisclosure is not enough to trigger estoppel . . . .").

## B. "New Harm"

Plaintiffs also allege they suffered a new harm and aggravation of old harm as a result of the 2002 through 2004 disclosures. This court agrees with the following

---

17. Plaintiff P.M.B. alleges his parents filed a complaint with the pastor at his church a year after his abuse and that no further action was taken by the Archdiocesan defendants. (P.M.B. compl. ¶¶40, 42.) However, plaintiff P.M.B. does not allege that he was misled by any Archdiocesan defendants. His sole allegation is he filed a complaint. Plaintiffs C.J.M., C.T.G., and the McDonnells allege discussions with the Archdiocese; however, these discussions occurred after the statute of limitations had already expired.

rationale of the Honorable Judge Alan Black of the Lehigh County Court of Common Pleas:

"Once the statute of limitations began to run on the plaintiffs' initial injury, it also began to run on any later injuries from the same tortious conduct. *Orozco v. Children's Hospital of Philadelphia*, 638 F. Supp. 280, 282 (E.D. Pa. 1986); *Cathcart v. Keene Industrial Insulation*, 324 Pa. Super. 123, 149, 471 A.2d 493, 507 (1984). The plaintiffs contend, however, that they suffered a new harm as a result of the 2002 disclosures, and therefore that they have a new cause of action beginning in 2002. The flaw in this argument is that the disclosures themselves were not tortious." *A.L.M.*, no. 2004-C-78 at 15-16.

Since the disclosures were not tortious, there can be no aggravated old harm or new harm.

### IV. *Group 2—Parisi Plaintiff*

#### A. Statute of Limitations As to the Archdiocesan Defendants and the Priest

Unlike the consolidated cases above, Parisi is suing both the Archdiocesan defendants and the priest who abused him. Also, Parisi's complaint contains different causes of action than those presented by the first group of plaintiffs.[18] Parisi's case also differs because it is one of repressed memory.

---

18. Plaintiffs have brought fraudulent concealment, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, battery, negligence, statutory violation/negligence per se, common-law duty of reasonable care, breach of fiduciary duty and respondeat superior claims.

Like the other plaintiffs, Parisi argues the Archdiocesan defendants fraudulently concealed incidents of sexual abuse of minors within the Archdiocese. (Parisi compl. ¶¶34-42.) Defendants argue Parisi's claims are barred by the applicable statute of limitations. Like the other plaintiffs' claims, the same two-year statute of limitations applies to Parisi's claims. See 42 Pa.C.S. §5524(1) (2)(7) (2004). Parisi was abused between 1973 and 1976, or from the seventh grade through his sophomore year at high school. (Parisi compl. ¶18.) However, Parisi did not commence his lawsuits until 2004, at age 44, which is over 20 years after the statute of limitations had expired. Consequently, plaintiff's claims are barred by the statute of limitations.

### 1. *The discovery rule*

Parisi has brought a battery claim against his abuser. However, the discovery rule does not normally apply to cases "where the underlying cause of action is fundamentally one for battery . . . [because] a plaintiff will ordinarily know all he or she needs to know concerning the injury and its cause at the moment the battery occurs." *E.J.M.,* 424 Pa. Super. at 459, 622 A.2d at 1393 (citing *Levenson,* 384 Pa. Super. 132, 557 A.2d 1081). Therefore, Parisi's battery claim is barred by the two-year statute of limitations. See 42 Pa.C.S. §5524(1) (2004).

Also, Parisi's claim is based on allegations of repressed memory. In Pennsylvania, the discovery rule does not apply to toll the statute of limitations in repressed memory cases. *Dalrymple,* 701 A.2d at 165, 171. In *Dalrymple,* the appellant recovered memories of being abused as a child. Appellant repressed those memories until 20 years after the assault occurred. *Id.* 701 A.2d at 165. The Pennsylvania Supreme Court upheld summary judgment be-

cause the recovery of repressed memories does not extend the statute of limitations. *Id.,* 701 A.2d at 171. Importantly, the court noted, "[r]egardless of how appellant categorizes repressed memory she cannot escape the fact that the original injury was a battery which is commonly defined at law as a harmful or offensive contact." *Id.,* 701 A.2d at 170.

In *E.J.M.,* the appellant did not commence a lawsuit against his abuser until eight years later, because he "did not become aware of the psychological and emotional injuries he suffered as a result of the alleged abuse . . . ." 424 Pa. Super. at 451, 622 A.2d at 1389. However, the Superior Court affirmed the lower court's ruling that the discovery rule did not apply to the case and the statute of limitations was not tolled. *Id.*

Here, Parisi makes allegations similar to those presented in the repressed memory cases. In particular, Parisi alleges he "was unable specifically to recall and/or to remember the sexual abuses . . . until approximately 2002." (Parisi compl. ¶54.) Parisi goes on to allege he was "repeatedly subject to mental trauma . . . [and] was psychologically disabled from understanding his legal rights and/or his ability to pursue legal action against defendants . . . ." (Parisi compl. ¶24.) Since Parisi's claims are based on repressed memory and Pennsylvania does not apply the discovery rule to toll the statute of limitations in repressed memory cases, the discovery rule is inapplicable here and Parisi's claims are time-barred.

### 2. *The doctrine of fraudulent concealment*

Parisi's allegations also do not toll the statute of limitations based on the doctrine of fraudulent concealment.

"[The Superior Court] ha[s] previously held that a defendant's general assurances that a situation or condition being experienced by the plaintiff is normal do not rise to the level of fraudulent concealment *where the plaintiff's own common sense should inform him that he has been injured.*" *E.J.M.,* 424 Pa. Super. at 462, 622 A.2d at 1395 (emphasis added) (citing *DeMartino v. Albert Einstein Medical Center,* 313 Pa. Super. 492, 460 A.2d 295 (1983)). In *E.J.M.,* the plaintiff alleged the priest abuser had assured plaintiff that "the physical acts being performed on [him] were necessary for his spiritual development . . . ." The Superior Court held the plaintiff's allegations did not rise to the level of fraudulent concealment. *Id.*

In the case sub judice, the allegations are analogous to the allegations of fraudulent concealment in the *E.J.M.* decision; moreover, the Superior Court's reasoning is applicable. Parisi alleges Reverend Gallagher "made the nature and extent of plaintiff's injuries unknown to plaintiff, disguising his illegal and immoral acts as acts sanctioned by God." (Parisi compl. ¶25.) In addition, the priest swore Parisi to secrecy about the sexual abuse by "invoking the names of God and Jesus Christ and invoking plaintiff's faith in the Holy Roman Catholic Church." (Parisi compl. ¶21.) Based on the Superior Court's reasoning in the *E.J.M.* decision, Parisi's allegations do not constitute fraudulent concealment since Parisi's common sense should have informed him of his injuries at the time of the abuse. Therefore, the doctrine of fraudulent concealment does not toll the statute of limitations in this case and Parisi's claims are barred by the two-year statute of limitations.

## V. *Conclusion*

Plaintiffs' arguments do not meet the requisite standards for application of either the discovery rule or the doctrine of fraudulent concealment. As stated by our Supreme Court in *Dalrymple,* "[t]he very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." 701 A.2d at 170 (quoting *Pocono,* 503 Pa. at 85, 468 A.2d at 471). While this court is sympathetic to the claims of the plaintiffs, the plaintiffs in their pleadings admit they knew at the time of the battery the cause of their injuries. Therefore, the statute of limitations as to their injuries started to run at the time of the battery and the plaintiffs' claims are time-barred. Since neither the discovery rule nor the doctrine of fraudulent concealment applies to toll the statute of limitations, plaintiffs' claims are time-barred.

Wherefore, for all of the reasons stated above, the Archdiocesan defendants' and Reverend Gallagher's motions for judgment on the pleadings are granted.