Diana L. VOJTASEK, Appellant

v.

DIOCESE OF ALLENTOWN, Reading
Central Catholic High School, Biship
Edward P. Cullen and Bishop Thomas
J. Welsh, Appellees.

Superior Court of Pennsylvania.

Argued Aug. 30, 2006.

Filed Dec. 20, 2006.

Reargument Denied Feb. 27, 2007.

Jay N. Abramowitch, Wyomissing, for
appellant.

C. Clark Hodgson, Philadelphia, Joseph
F. Leeson, Jr., Bethlehem, for appellees.

BEFORE: LALLY–GREEN, TODD
and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Diane L. Vojtasek appeals
the order granting a motion for judgment
on the pleadings filed by Appellees Dio-

cese of Allentown, Bishop Edward P. Cullen, Bishop Thomas J. Welsh, and Reading Central Catholic High School (hereinafter "Central Catholic") on grounds that Appellees' fraudulent concealment tolled the statute of limitations. We affirm.

¶ 2 "The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. 'The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.'" *Tucker v. Philadelphia Daily News,* 577 Pa. 598, 627–28, 848 A.2d 113, 131 (2004) *(quoting MacElree v. Philadelphia Newspapers, Inc.,* 544 Pa. 117, 674 A.2d 1050, 1054 (1996)). "Further, in passing on a challenge to the sustaining of a motion for judgment on the pleadings, our standard of review is limited. A motion for judgment on the pleadings will be granted where, on the facts averred, the law says with certainty that no recovery is possible." *American Appliance v. E.W. Real Estate Management, Inc.,* 564 Pa. 473, 477, 769 A.2d 444, 446 (2001) (citations omitted).

¶ 3 Appellant has limited her question on appeal to whether the trial court erred in refusing to recognize that particular averments in her complaint create an issue of fact as to whether the fraudulent concealment doctrine applies to the case at bar. *See* Appellant's brief, at 14 ("[Appellant's] Complaint asserts factual allegations sufficient to satisfy the [. . .] fraudulent concealment exception to the two[-]year statute of limitations [. . .].""). Accordingly, we shall determine whether Appellant's action should be remanded for further proceedings or dismissed after reviewing the complaint under the assumption that the allegations contained therein are true.

¶ 4 The present lawsuit was commenced on September 28, 2004, with the filing of a fourteen-count complaint alleging that, in September of 1990, Appellant was sixteen years of age and in the eleventh grade at Central Catholic when she was first sexually abused by Father James F. Gaffney, who was the vice-principal and disciplinarian at the high school. Central Catholic is a private, religious educational institution under the charge of the Diocese of Allentown, whose patriarch was Appellee Bishop Cullen after February 9, 1998, while his predecessor was Appellee Bishop Welsh.

¶ 5 When Appellant enrolled at Central Catholic at the age of sixteen, Father Gaffney immediately befriended the girl because her parents were going through a divorce, and she exhibited signs of depression related thereto. Father Gaffney began meeting with Appellant after school and routinely took her for rides in his vehicle. During these sojourns, Father Gaffney broached topics of a sexual nature and, eventually, engaged in sexual relations with Appellant at a private residence and in his high school office. This clandestine relationship (described by Father Gaffney to Appellant as their "secret") was disclosed by Appellant to a friend at the high school. The matter was also reported to administrators and/or representatives at Central Catholic, who confronted Appellant about the abuse, and she confirmed its existence.

¶ 6 Thereafter, the offending priest was reassigned to a parish in Easton, Pennsylvania, and Appellant was ostracized by students, priests and other faculty members and administrators for the remainder

of the school year. Yet, no one from Central Catholic reported the sexual abuse to Appellant's parents. In fact, when Appellant's mother contacted Central Catholic because she had heard stories about the relationship, she was deceived by Appellees into believing that Father Gaffney had not harmed her daughter. Further, the sexual relationship between Appellant and Father Gaffney continued when she matriculated into Penn State University—Berks County campus.

¶ 7 It was not until January of 2004 that Appellant learned through various media sources that civil suits had been filed against Appellees alleging they had fraudulently concealed and/or "covered up" their knowledge of the sexual abuse that had been perpetrated upon minors in the Diocese of Allentown by predator priests. *See* Appellant's Complaint, 9/28/04, ¶ 74. Within nine months of discovering *via* media exposure the proliferation of suits against Appellees, Appellant initiated the present lawsuit claiming that Appellees had knowledge of Father Gaffney's sexual abuses but engaged in "the covert practice of concealing the problem," which "deprive[ed Appellant] of the knowledge of the essential factual averments which would have formed the basis of [her] rights to legal redress against [Appellees]." *Id.* at 160. Appellant also asserted that Appellees "obstructed the prosecution of [her] cause of action against them by continuously concealing the fact that they had knowledge of Father Gaffney's predilections before the time [she] was abused." *Id.* at 163.

¶ 8 In reply, Appellees filed an answer with new matter contending that, *inter alia*, Appellant's claims were barred by the applicable statute of limitations, and, prior to 2002, victims of childhood sexual abuses

by the clergy had instituted lawsuits and filed claims against Appellees for negligent retention, hiring, and supervision involving the clergy sufficient to alert Appellant of the possibility of filing a lawsuit against Appellees.

¶ 9 After hearing and upon consideration of the parties' respective positions, the trial court found that the statute of limitations was not tolled, and an order was entered granting Appellees' motion for judgment on the pleadings. A timely appeal was filed thereafter raising the following issue; to-wit:

WHERE [APPELLANT] SPECIFICALLY ALLEGED THAT AS A PART OF [APPELLEES'] COVER–UP, HER MOTHER WAS PURPOSELY LIED TO BY SCHOOL OFFICIALS REGARDING THEIR KNOWLEDGE OF THE SCOPE AND NATURE OF THE SEXUALLY ABUSIVE RELATIONSHIP BETWEEN ONE OF THEIR PRIESTS/TEACHERS AND [APPELLANT], WAS IT ERROR FOR THE TRIAL COURT TO DISMISS HER ESTOPPEL CLAIM UNDER THE DOCTRINE OF FRAUDULENT CONCEALMENT EXCEPTION TO THE STATUTE OF LIMITATIONS AND GRANT [APPELLEES'] MOTION FOR JUDGMENT ON THE PLEADINGS?

Appellant's brief, at 6.

¶ 10 The statute of limitations in an action to recover damages for personal injury, not resulting in death, is two years. 42 Pa.C.S.A. § 5524(2). Nonetheless, the running of the statute may be tolled and a defendant estopped from asserting it as a defense in clear cases of fraud, deception, or concealment. *Baselice v. Franciscan Friars Assumption BVM Province, Inc.,*

879 A.2d 270, 278 (Pa.Super.2005). The Pennsylvania Supreme Court summarized the legal principles relevant to establishing a claim of estoppel in *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967):

> (a) mere mistake, misunderstanding or lack of knowledge do not toll the running of the statute of limitations; (b) if, through fraud, deception or concealment of facts, a [defendant] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then the [defendant] is estopped from evoking the statute; (c) the fraud which will toll the statute and effect an estoppel need not be fraud in the strictest sense, *i.e.,* inclusive of an intent to deceive, but may be fraud in the broad sense, *i.e.,* inclusive of an unintentional deception; (d) an estoppel becomes operative only in clear cases of fraud, deception or concealment; (e) the statute of limitations will run against persons under a disability [ . . . ].

*Walters,* at 449–50, 227 A.2d at 835 (citations omitted). *Accord Ward v. Rice,* 828 A.2d 1118, 1123 (Pa.Super.2003), aff'd, 575 Pa. 704, 837 A.2d 1178 (2003); *Haggart v. Cho,* 703 A.2d 522, 527 (Pa.Super.1997).

¶ 11 Herein, Appellant argues that Appellees' representatives "lied" to her mother about the scope and nature of the sexual relationship between herself and Father Gaffney, which fraudulent conduct caused Appellant to delay in filing suit. *See* Appellant's brief, at 22. Further, Appellant takes the position that, "[i]f this Honorable Court accepts [Appellees'] argument in this regard, it is essentially sanctioning the use of deceit to enable a defendant to invoke the statute of limitations. In other words, [Appellees] will be encouraged to misrepresent to a minor's parent the fact that a minor had been harmed if confronted by the parent." *See* Appellant's reply brief, at 4. We agree in principle with Appellant's argument but not to the extent to suspend the running of the statute of limitations indefinitely.

■ ¶ 12 To elaborate, at the pre-trial stage of the case, we must view the non-moving party/Appellant's pleadings as true. *Tucker, supra.* This translates into accepting as accurate Appellant's averment that, "when [her] mother contacted Central Catholic because she suspected something [was] wrong with [the] daughter and she had heard stories about the relationship between [the] daughter and Father Gaffney, [her] mother was deceived by [Appellees] and/or their representatives into believing that Father Gaffney had not harmed [the] daughter." *See* Appellant's Complaint, 9/28/04, ¶ 42. This concealment by Appellees' personnel lulled the "injured person and/or her representative" into a sense of security so that such person's vigilance was relaxed. *Walters, supra.* Our inquiry does not come to an end with such a finding.

¶ 13 We have already stated that viewing Appellant's fraudulent concealment claim as true, the statute of limitations was tolled, but only for a finite period. Appellant was sixteen years of age upon entering the eleventh grade at Central Catholic, and this is also when the sexual abuses began, but the statute of limitations would not begin to run until Appellant reached eighteen years of age. *See* 42 Pa.C.S.A. § 5533(b), which provision is implicated here to the extent that the sexual abuses began in September of 1990, and this point in time is after the 1984 General Assembly enactment tolling the running of the statute of limitations for minors until the age of majority. *Meehan v. Archdiocese of Philadelphia,* 870 A.2d 912, 916 n. 4

(Pa.Super.2005). Stated otherwise, under Section 5533(b) and the assignment of fraudulent concealment to Appellees, the statute of limitations was tolled until 1994: With Appellant being sixteen years of age in 1990, her age of majority occurred in 1992, and the two-year statute of limitations began to run thereafter, which made the expiration date for Appellant instituting suit no later than 1994. Appellant having instituted suit in 2004, the complaint was filed beyond the two-year statute of limitations.

¶ 14 The essence of Appellant's fraudulent concealment argument is that the Appellees' representatives "lied" when her mother made inquiry as to a sexual relationship between Appellant and Father Gaffney. This tolled the statute of limitations until 1994, at which time Appellant was beyond the age of majority and conceded "at the time of the sexual assault [beginning in September of 1990] that she suffered an 'injury' at the hands of Father Gaffney [ . . . ]." *See* Appellant's Complaint, 9/28/04, ¶ 87. Consequently, Appellant having admitted being "injured" by Father Gaffney as early as September of 1990, she should also have been aware that Appellees, as the priest's employers, were potentially liable for that abuse. *See Meehan,* 870 A.2d at 922 ("for a cause of action to accrue, the entire theory of the case need not be immediately apparent [ . . . ] as soon as [Appellants] became aware of the alleged abuse, they should also have been aware that the [Appellees], as the priests' employers, were potentially liable for that abuse.") *(quoting Kelly v. Marcantonio,* 187 F.3d 192, 201 (1st Cir.1999)).

¶ 15 We must keep in mind that it is the duty of a party asserting a cause of action to use all reasonable diligence to be informed of the facts and circumstances upon which a potential right of recovery is based to institute suit within the prescribed statutory period. *Fine v. Checcio,* 582 Pa. 253, 269, 870 A.2d 850, 859 (2005); *Pocono International Raceway, Inc. v. Pocono Produce Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983). At bar, even conceding that Appellant's minority at the time of the sexual abuses would toll the statute of limitations (under Section 5533(b)), Appellant still brought suit (in 2004) beyond even the extended period of time under the minority tolling statute, which began in 1990 and expired in 1992. Appellant's inaction spanned fourteen years after acknowledging being "injured" (in September of 1990) by Father Gaffney and ten years after the tolling of the applicable statute of limitations (beginning with 1992 through 1994). Such events render Appellant's complaint too late in time to avoid the barring effect of the statute of limitations. *See Meehan, supra.*

¶ 16 Order affirmed.